## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                         Case No. 3:19-cr-168-TJC-JBT

JAMES RANDELL CREAMER

_____/

## ORDER

Defendant James Randell Creamer is a 58-year-old inmate incarcerated at Butner Low FCI, serving a 24-month term of imprisonment for conspiracy to distribute 50 grams or more of methamphetamine. (Doc. 38, Judgment). According to the Bureau of Prisons (BOP), he is scheduled to be released from prison on January 9, 2023. Defendant, through court-appointed counsel, moves for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). (Doc. 54, Renewed Motion for Compassionate Release). He requests compassionate release because of the Covid-19 pandemic and because he suffers from congestive heart failure, nonischemic cardiomyopathy, and other medical conditions. The United States responded in opposition (Doc. 55) and incorporates by reference its arguments against Defendant's initial motion for compassionate release (see Doc. 46). At the Court's direction, Defendant filed a supplement addressing Defendant's heart condition and his position in a heart transplant program. (Doc. 59).

The Court has reviewed and considered the parties' arguments and exhibits. Defendant's Renewed Motion for Compassionate Release is due to be granted.

## I.    Law

Generally speaking, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). However, as amended by the First Step Act, § 3582(c) provides:

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that … extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i).[1]

The relevant policy statement is U.S.S.G. § 1B1.13. The policy statement provides:

Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if,

---

[1]    The United States concedes that Defendant has satisfied the exhaustion requirement. (Doc. 55 at 5).

after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

(1)(A) Extraordinary and compelling reasons warrant the reduction; or

(B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. The application notes define four circumstances that qualify as "extraordinary and compelling reasons" for a reduction in sentence: (A) a terminal illness or a serious medical condition, (B) old age, (C) certain family circumstances, and (D) other reasons, other than or in combination with those listed in (A) through (C), as determined by the BOP Director. U.S.S.G. § 1B1.13, cmt. 1. The Eleventh Circuit has held that § 1B1.13 is an applicable policy statement, such that its substantive criteria govern motions for compassionate release filed by the BOP and defendants alike. United States v. Bryant, 996 F.3d 1243, 1247–48 (11th Cir. 2021); see also United States v. Giron, 15 F.4th 1343, 1346 (11th Cir. 2021). The Eleventh Circuit has also held that "Application Note 1(D) does not grant discretion to courts to develop 'other reasons' that might justify a reduction in a defendant's sentence." Bryant, 996 F.3d at 1248.

"[B]y dint of § 3582(c)(1)(A)'s plain text, a district court may reduce a term of imprisonment if (1) the § 3553(a) sentencing factors favor doing so, (2) there are 'extraordinary and compelling reasons' for doing so, and … (3) doing so wouldn't endanger any person or the community within the meaning of § 1B1.13's policy statement." United States v. Tinker, 14 F.4th 1234, 1237 (11th Cir. 2021). However, "nothing on the face of 18 U.S.C. § 3582(c)(1)(A) requires a court to conduct the compassionate release analysis in any particular order." Id. "Because all three conditions – i.e., support in the § 3553(a) factors, extraordinary and compelling reasons, and adherence to § 1B1.13's policy statement – are necessary, the absence of even one would foreclose a sentence reduction." Id. at 1237–38.

## II.    Discussion

### 1. Defendant has shown "extraordinary and compelling reasons"

Under the policy statement, a movant demonstrates "extraordinary and compelling reasons" for compassionate release if he or she has a terminal illness or a serious medical condition. U.S.S.G. § 1B1.13, cmt. 1(A). A terminal illness is "a serious and advanced illness with an end of life trajectory," including "end-stage organ disease." Id., cmt. 1(A)(i). Notably, "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required" for a condition to qualify as a terminal illness. Id. Absent a terminal

illness, a movant's condition also qualifies as an extraordinary and compelling reason if he or she is suffering from a "serious physical or medical condition," "a serious functional or cognitive impairment," or is "experiencing deteriorating physical or mental health because of the aging process" "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." Id., cmt. 1(A)(ii).

Defendant has been diagnosed with several medical conditions, the most serious of which are congestive heart failure and nonischemic cardiomyopathy. (Doc. 34, Amended Presentence Investigation Report [PSR] ¶¶ 94, 97; Doc. 47, Medical Records at 31, 34–35, 43, 76, 118, 138–51).[2] In March 2015, Defendant underwent a cardiac catheterization (Doc. 34 ¶ 94) and at one point wore a defibrillator vest (Doc. 52 at 13). In addition to his heart conditions, Defendant has been diagnosed with hypertension, obesity, gout, and prediabetes. (Doc. 47 at 76).

While the term "heart failure" does not mean that the heart has stopped, it means the heart does not pump enough blood to meet the body's needs. National Heart, Lung, and Blood Institute (NHLBI), Heart Failure, available at https://www.nhlbi.nih.gov/health-topics/heart-failure (last visited Jan. 18,

---

[2]    For Defendant's medical records (Doc. 47), citations refer to the page number stamped on the lower right-hand corner of each page.

2022). The Cleveland Clinic describes heart failure as "a chronic long-term condition that gets worse with time." Cleveland Clinic, <u>Heart Failure</u>, available at <u>https://my.clevelandclinic.org/health/diseases/17069-heart-failure-understanding-heart-failure</u> (last visited Jan. 18, 2022). Likewise, Britain's National Health Service describes heart failure as "a serious long-term condition that'll usually continue to get slowly worse over time" and "is often eventually fatal." National Health Service, <u>Heart Failure</u>, available at <u>https://www.nhs.uk/conditions/heart-failure/</u> (last visited Jan. 18, 2022). According to one medical journal, "[o]ver the last 10 years, there has been a realisation that heart failure (itself the final common pathway of several aetiologies such as hypertension, ischaemic and valvular heart disease, and cardiomyopathy) is a terminal illness." Miriam J. Johnson, <u>Management of end stage cardiac failure</u>, Postgrad Med. J., June 2007, available at <u>https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2600041/</u>. Thus, congestive heart failure is a serious illness with an "end of life trajectory" even if there is no "specific prognosis of life expectancy" (which the policy statement does not require). U.S.S.G. § 1B1.13, cmt. 1(A)(i).

While a diagnosis of congestive heart failure may not be sufficiently advanced in every single case to qualify as a "terminal illness" under the policy statement, <u>see</u> <u>United States v. Oneal</u>, No. 20-13533, 2021 WL 5894858, at *2 (11th Cir. Dec. 14, 2021) (affirming district court's conclusion that defendant's medical conditions, including congestive heart failure, did not qualify as a

terminal illness), it does qualify as such in Defendant's case. As Defendant notes in the Renewed Motion, he

> was previously accepted as a patient at [Tampa General Hospital's] Advanced Organ Disease & Transplantation Institute. TGH's Heart Transplant Center accepts patients with "[a]dvanced heart failure (also referred to as end-stage heart failure)," which "is a type of heart failure in the final, most serious stage." His treatment at this institute demonstrates that Mr. Creamer's congestive heart failure and cardio-myopathies are a severe, end-stage disease of his heart.

(Doc. 54 at 12 (internal citations omitted)). Defendant was dropped from TGH's heart transplant program on December 29, 2021, because his last ejection fraction (EF) measurement – which tests how well the heart pumps blood – was 45-50% as of May 2021 (Doc. 59 at 1). That was a modest improvement from the 36% EF measurement reported at sentencing in October 2020. (Doc. 52 at 13). However, this modest improvement probably reflects the variability of EF measurements instead of a substantial recovery. Indeed, Defendant's EF measurements have been precarious (see Doc. 59 at 1–2), having gone as low as 10% when he was first diagnosed with heart failure (Doc. 47 at 43). And a substantial recovery from congestive heart failure is unlikely because, according to prevailing medical authorities, one "cannot go backward through the stages" of heart failure, Cleveland Clinic, Heart Failure, "heart failure is a serious condition that has no cure," NHLBI, Heart Failure, and it "tends to get gradually worse over time," often proving to be "eventually fatal," NHS, Heart Failure. It further bears noting that, as much as Defendant's EF percentage has

fluctuated in the past, he has not received an EF measurement since May 2021, just before he surrendered for service of his sentence. (Doc. 59 at 2). Thus, Defendant's EF measurement from eight months ago is not necessarily a reliable gauge of the current state of his health.

The Court concludes, under the facts here, that Defendant's congestive heart failure, together with cardiomyopathy, is a serious and advanced illness with an "end of life trajectory," and therefore is a "terminal illness" under § 1B1.13, Application Note 1(A)(i). As such, Defendant has demonstrated "extraordinary and compelling reasons" for a reduction in sentence.[3]

### 2. Defendant is not a danger to another person or to the community

The policy statement provides that a court may grant a reduction in sentence only if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Under § 3142(g), a court must consider four factors: (1) "the nature and circumstances of the offense charged," including whether the offense involved a controlled substance or a firearm, (2) "the weight of the evidence against the person," (3) "the history and characteristics of the person," including family ties, community ties, past conduct and criminal history, and "record concerning

---

[3]      Alternatively, the Court would find that Defendant has a qualifying "serious physical or medical condition." U.S.S.G. § 1B1.13, cmt. 1(A)(ii). Based on the Court's findings, the Court need not address Defendant's argument regarding the risks of COVID-19.

appearances at court proceedings," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

Having considered these factors, Defendant is not a danger to another person or to the community. In saying so, the Court does not minimize the seriousness of the offense or the fact that methamphetamine is a dangerous controlled substance. Nor does the Court ignore that Defendant had a "fairly long" criminal history, although most of it was too old to score under the Sentencing Guidelines. (Doc. 52 at 25).[4] Rather, the Court bases its decision on Defendant's capacity for rehabilitation and his willingness to abide by the law going forward. As the Court observed at sentencing, there are many "good things about Mr. Creamer. He obviously has the support of friends and family and has done productive things in his life as well. So it certainly hasn't been all bad news." (Doc. 52 at 25). At sentencing, the Court received several letters in support of Defendant from friends and family, who described him as a compassionate and caring friend and brother despite the hardships he faced growing up. (Doc. 36-1, Letter from Christina Creamer-Mills; Doc. 36-2, Letter from Friends and Family). Notably, for example, Defendant dedicated eight

---

[4]      Most of Defendant's criminal history involved things such as drugs and theft. In 2017, he had one conviction for domestic violence battery following an altercation with a woman, in which he "struck the victim two times with a cell phone." (Doc. 34 ¶ 67). Defendant was adjudicated guilty and assessed court costs. (Id.).

years of his life to caring for his brother, David "Rusty" Riley, Jr., after his brother suffered a catastrophic stroke. (<u>See</u> Doc. 36-1 at 2; Doc. 36-2 at 1–2, 4, 9–10).

After his arrest, Defendant engaged in exceptional cooperation with the government, despite potential risk to himself. (Doc. 52 at 25–26). Although cooperation was surely in Defendant's interest, the Court remarked at sentencing that, in its experience, "people who are cooperating are also trying to show remorse, trying to get right with themselves and with the law." (<u>Id.</u> at 29). The Court noted that "[t]here is a rehabilitative aspect to [cooperation] in many cases" and Defendant appeared to be "a good example of that." (<u>Id.</u>).

In addition, while the offense was serious, there was no evidence that it involved firearms, violence, or threats of force. (<u>See</u> Doc. 34 ¶¶ 10–17; Doc. 52 at 24). By the time of sentencing, nearly three years had passed since the offense occurred without Defendant reoffending. (Doc. 52 at 29). Defendant's time in pretrial supervision was unremarkable and largely incident-free. And, following his arrest, Defendant successfully completed a yearlong drug rehabilitation program. (<u>Id.</u> at 30). Importantly, as the Court commented at sentencing, it believes Defendant has put this offense behind him and "view[s] Mr. Creamer as unlikely to recidivate." (<u>Id.</u> at 28). To the extent Defendant does pose any risk of reoffending, the Court believes the terms of supervised release, which include a 180-day period of home detention (Doc. 38 at 5), will mitigate

that risk. Thus, the Court concludes, based on Defendant's history and characteristics, his ties to the community, and evidence of his rehabilitation, that he does not pose a danger to another person or to the community.

### 3. The § 3553(a) factors support a sentence reduction

Finally, the Court must consider whether the sentencing factors set forth in 18 U.S.C. § 3553(a) support reducing Defendant's sentence to time served. To date, Defendant has served approximately eight and a half months of his 24-month term of imprisonment. Section 3553(a) requires the Court to consider a variety of factors, including the history and characteristics of the defendant, the need to provide just punishment, promote respect for the law, afford adequate deterrence, and protect the public, as well as the need to provide the defendant with needed medical care.

The Court finds that the § 3553(a) factors support reducing Defendant's sentence to time served. As the Court recounted at sentencing, Defendant's case involves substantial mitigating circumstances. (See Doc. 52 at 23–31). While the offense was serious, and Defendant had some criminal history, "everything else is really in mitigation." (Id. at 25). Defendant accepted responsibility for the offense and expressed remorse. (Id. at 17–18). He was a relatively low-level dealer but also a user himself. (See id. at 24). Yet, after his arrest, Defendant engaged in exceptional cooperation with the government, completed a yearlong

drug rehabilitation program, and avoided reoffending while under pretrial supervision. The Court determined that Defendant was unlikely to recidivate, and expressly found that certain § 3553(a) factors, such as the need to afford adequate deterrence and to protect the public, favored Defendant. (Id. at 28). In addition, Defendant overcame a difficult upbringing to become a supportive and compassionate friend and brother to others, as reflected in the letters of support he received. And critically, Defendant suffers from serious, potentially fatal heart conditions that require intensive supervision and management.

Although many of these circumstances were already factored into Defendant's 24-month prison sentence, two subsequent developments were not. First, the Court recommended that the BOP place Defendant at Butner Federal Medical Center (FMC) given Defendant's "need of ongoing treatment for his serious heart condition." (Doc. 38 at 2). That has not happened. Instead, Defendant has been incarcerated at Butner Low FCI, which does not have the resources of a dedicated medical center. Second, and perhaps relatedly, Defendant has not had an EF measurement in the eight months since he entered BOP custody, despite the severity of his heart condition. While the Court does not impugn the efforts of staff at Butner Low FCI to provide appropriate medical care, Defendant has not received the level of care that the Court recommended and believed he would receive given the seriousness of his heart conditions. Were Defendant not in prison, he would resume treatment at

Tampa General Hospital (Doc. 54 at 17 n.7), where he might be able to regain his place in the heart transplant program.

In view of all the § 3553(a) factors, the Court determines that reducing Defendant's sentence to time served is warranted.

Accordingly, it is hereby **ORDERED:**

1. Defendant James Randell Creamer's Renewed Motion for Compassionate Release (Doc. 54) is **GRANTED**.

2. Defendant's proposed residence having been deemed suitable for supervision, the Court reduces Defendant's term of imprisonment to **TIME SERVED plus 10 days**, for a release date of January 31, 2022. In all other respects, Defendant's Judgment and sentence (Doc. 38), including the term and conditions of supervised release, are unchanged.

**DONE AND ORDERED** in Jacksonville, Florida this 21st day of January, 2022.



TIMOTHY J. CORRIGAN
United States District Judge

lc 19
Copies:
Counsel and parties of record
United States Probation Office
United States Marshals
Warden, Butner Low FCI